## NICHOLSON v. COUSAR.

WILLS—LIMITATION OF ESTATES.—Under the will in question and the deeds held by plaintiff from the devisees, held that she has a fee simple title to the lands.

Before WITHERSPOON, J., Chester, May, 1897. Affirmed.

Controversy, without action, by Sarah G. Nicholson against John G. Cousar. The following is the Circuit decree:

This a controversy without action, submitted by consent of parties, under section 374 of the Code. It appears from the agreed statement of facts that one Elihu Lynn died testate in 1875, seized and possessed of 190 acres of land in

the county aforesaid, and leaving surviving his widow,
Maria, who subsequently intermarried with one Millen, and
three sons named in testator's will.   Two of testator's sons
have since died intestate and unmarried, leaving as their
heirs at law the said widow, and Robert Lynn, the surviv-
ing son, both of whom are still living.   After providing
for the payment of his debts, testator devised the 190 acres
of land as follows: "I will and direct that the plantation
and stock remain, and all things belonging to the same as
it is, subject to necessary changes to keep up the place, as
may be judged by my executor (whose name will herein-
after be mentioned), and is to remain so during my wife's
lifetime, and after her death the property and money of my ·
estate is to be equally divided among my children that may
be alive at the time."   Testator then states that he has con-
tracted to sell 100 acres of the land, and directs his executor
to make title on payment of the purchase money.   The
testator also appointed guardians for his three sons, "to re-
ceive and pay over for their benefit of what may be coming
to them of my estate."   In February, 1889, Robert Lynn,
the surviving son, executed to the plaintiff a mortgage of
the 190 acres of land to secure a loan by plaintiff of $600.
On the 7th of December, 1889, the plaintiff bought from
Maria Millen, the testator's widow, "all her right, title, and
interest, whether an estate for life, estate in dower, or of in-
heritance, or any other estate of any kind of which I may
have in said lands," in consideration of $260.   In October,
1890, under proceedings in foreclosure, and by order of
Court, "all the right, title, and interest of the said Robert
Lynn in the mortgaged premises, whether an estate in fee
simple, for life or in remainder," was sold and purchased by
the plaintiff, who has contracted to sell the 190 acres of
land to the defendant, John G. Cousar.   As some doubt has
been expressed whether plaintiff could convey to the de-
fendant a good title, the object of this submission is to have
the matter judicially determined, whether the plaintiff has
acquired and can convey to the defendant a fee simple title

to the land. It was decided in *Nicholson* v. *Drennan*, 35 S. C., 333, that Maria, the widow of testator, took an estate for life in the land by implication. As plaintiff has already acquired the widow's estate for life, the question arises, what estate does the surviving son, Robert Lynn, take in the land under the will? Is it a vested or contingent remainder? If a vested remainder, then plaintiff has acquired all of the title to the land of which testator died seized and possessed. The law favors vested remainders, and no remainder will be construed to be contingent, which may be deemed vested, consistent with the testator's *intention and the rules of law*. But where contingent remainders have been clearly created by the language employed by testator, they must be sustained under the well established rules of law. Persons have the right to dispose of their property by will as they see proper, so long as they keep within the rules of law. What is the distinction between a vested and a contingent remainder? A vested remainder is one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend upon the happening of any future event, but whose enjoyment in possession is postponed to some future time. A contingent remainder is one which is limited to a person not in being or not ascertained, or if limited to an ascertained period, it is so limited that his *right* to the estate depends upon some contingency in future. It is not so much the uncertainty of the estate in future, but the uncertainty of the *right* to such enjoyment, which makes the difference between the two kinds of remainders. *Faber* v. *Police*, 10 S. C., 387. What is the result of the application of these tests to the provisions of the will above quoted? The estates devised passed out of and were created at the time of the testator's death. There is no language employed indicating testator's intention to give the remaindermen any *right* to an estate in the land until the death of his widow. After her death (the widow), the will provides: "the property and money of my estate is to be equally divided

among my children that may be alive at the time." In plain language, testator expresses his intention and purpose that his children should not take any estate in the land as remaindermen until the death of his widow and the termination of the life estate. When this period arrives, who can take as remaindermen? Only such of his three sons, if any, "as may be alive at the time," referring to the death of the widow. Thus it will be observed that by the express terms of the will the estate in remainder is limited both to dubious and uncertain persons, and upon an uncertain future event. I conclude that Robert Lynn, testator's surviving son, can only take a contingent remainder under the will, should he survive the testator's widow.

Testator has not contemplated, and, therefore, has failed to make any diposition of the estate in remainder, in the event that all of his three sons should *predecease* his widow. The Court cannot undertake to supply such omission, and in the event of Robert Lynn's death before the widow, the heirs at law of *Elihu Lynn, at the time of his death*, would be entitled to such estate in remainder as intestate property, according to the statute of distributions. Should the estate in remainder become *intestate* property, owing to Robert Lynn's predeceasing the widow, then at the death of the widow her heirs and the heirs of Robert Lynn, the only parties who could then make claim to the estate in remainder, would be forever *barred* and *estopped*, by the deeds of conveyance of their respective ancestors, from disputing plaintiff's title to the land. I conclude, and it is hereby adjudged, that the plaintiff has acquired a fee simple title to the 190 acres of land by the purchase for a valuable consideration of the respective rights, titles, and interests in the land of Maria, the widow, and of Robert Lynn, the surviving child, of the testator, Elihu Lynn. Having adjudged that the plaintiff has acquired the fee simple title to the 190 acres of land, I do not feel authorized, under the terms of submission, to make any further order in the premises.

14—50

From this decree the defendant appeals on the following grounds, to wit:

1. Because his Honor found that although Robert Lynn took a contingent remainder in the said land, the plaintiff has a fee simple title therein.

2. Because his Honor found that in the event of the death of Robert Lynn before the death of Maria, the widow, the inheritance would go to the heirs at law of Elihu Lynn at the time of his (Elihu's) death; whereas he should have held that in such event the inheritance would go to such persons as might be heirs at law of Elihu Lynn at the death of Maria, his widow, and the life tenant, to wit: the collateral next of kin of Elihu Lynn.

3. Because his Honor did not hold that plaintiff had only a title for the life of Maria, the widow, and the remainder in fee, contingent upon the survival of the widow by Robert.

4. Because his Honor held that the contingent remainder in Robert Lynn was transferable, even by estoppel, before it should be vested.

The respondent served notice that at the hearing of this cause he will ask to have the decree of Judge Witherspoon affirmed, on the further ground that the remainder to Elihu Lynn's sons was a vested and not a contingent remainder.

*Mr. Geo. W. Gage*, for appellant, cites: 35 S. C., 333; Dudley Ch., 115; 20 S. C., 75; 2 N. & McC., 347; 23 S. C., 105; 26 S. C., 450; 2 Hill Ch., 241.

*Mr. S. P. Hamilton*, contra, cites: 25 Wend., 119; Faber v. Police, 10 S. C.

July 28, 1897.  The opinion of the Court was delivered by

MR. JUSTICE POPE.  This cause was submitted to Judge Witherspoon under section 374 of the Code of Procedure, and involved the validity of a proposed deed in fee simple from the plaintiff to the defendant for a tract of land containing 190 acres, and situate in Chester County, in this

State.   The admitted facts underlying the controversy were about these: Elihu J. Lynn departed this life in 1875, leaving of force his last will and testament, by the terms of which the testator provided, amongst other things: "That the plantation and stock remain, and all things belonging to the same, as it is, subject to necessary changes to keep up the place as may be judged by my executor (James Drennan), and is to remain so during my wife's lifetime, and after her death the property and money of my estate is to be equally divided among my children that may be alive at that time. * * * If it turns out that my children can't stay on the place together, it is my will, and also my request, that Mr. Henry Drennan should take my two oldest boys, and take care of them, and I also appoint him their lawful guardian, to receive and pay over what may be coming to them of my estate.   I also request my sister, Nancy Millen, to take my son, Robert, and take care of him as long as he may live, if necessary, and I appoint her his lawful guardian, to receive and pay out what money may be coming to him of my estate."   Said testator had as his real estate the plantation hereinbefore referred to.   His wife, Maria, and three sons by a previous marriage, and one son, the child of the said Maria, were the heirs at law of the said testator.   The two sons of the first marriage, of whom Mr. Henry Drennan was appointed guardian, and his son by his intermarriage with his last wife, Maria Lynn, all died unmarried and childless.   Maria Lynn, as widow, and Robert Lynn, the son, alone now survive.   Maria Lynn married one Millen, and moved off testator's lands.   In February, 1889, the son, Robert Lynn, procured a loan from the plaintiff, Sarah G. Nicholson, of $600, and to secure the payment thereof made a deed by way of mortgage of the whole 190 acres of land in regular form, and purporting to carry the fee.   In 1890, the mortgage was foreclosed, and the land purchased by the plaintiff, Sarah G. Nicholson.   On the 7th day of December, 1889, Sarah G. Nicholson, for a valuable consideration, received a deed from

Maria Millen, formerly Lynn, wherein she, the said Maria, conveyed in fee simple "all her right, title, and interest, whether an estate for life, estate in dower or of inheritance, or any other estate of any kind, which she had or may have in said lands." Robert Lynn and the said Maria Millen are still alive. The plaintiff and defendant are not agreed as to the estate of the said Robert Lynn in said lands, and ask for a construction of the said will of the said Elihu Lynn.

The cause came on to be heard before his Honor, Judge Witherspoon, by whose decree it was held that the plaintiff had acquired the fee simple title to said lands. This decree will be reported and also the defendant's exceptions, as well as the additional ground for affirmance of such decree by the respondents.

It is needless to attempt the discussion of the grounds of appeal *seriatim;* their object will be entirely subserved, we think, by the method we shall adopt in disposing of them. The Circuit Judge was correct in pronouncing the estate created in the children of Elihu Lynn, after the falling in of the life estate, carved out by such testator for his widow, Maria Lynn, who has since intermarried with one Millen, to be contingent remainders; the authorities he cites support this proposition. But we think this conclusion of the Circuit Judge must be limited to that disposition by testator in his will in which he contemplated the widow and all his children being able to live together upon his lands. The will when closely examined will, we think, show that the testator contemplated a second state or condition of his estate, and an entirely different result if that latter condition should prevail. In effect, he provides in his will: *First.* His widow and children shall all continue to live upon his plantation, using the property therewith connected, and that his wife should have a life estate in his lands, and the fee thereafter should vest in his children who should be alive at the death of his widow. *Second.* That if it should so happen that his children could not stay upon the place, that in that event, after the life estate of his widow, Maria, should

fall in, the whole estate, money, real and personal property, should belong to his children—the shares of the two oldest sons to be paid to and managed by his friend, Mr. Henry Drennan, who he appointed their guardian, and that of his son, Robert, to be paid to his sister, Mrs. Millen, whom he appointed Robert's guardian. In this last event, the estates of the children would become vested remainders. The last event did occur, for Mrs. Maria Lynn moved from the place with one of the children, thus defeating the first scheme provided for in testator's will. We think this last view of testator's will is necessary to carry out its provisions, for the testator certainly contemplated *in the first instance* that his plantation, stock and all things belonging to the same should remain as they were at his death, and be kept in that condition, *to afford a home for his wife and all his children*—a life estate being given to his said wife—"during my wife's lifetime," and a contingent remainder to the children, "to be equally divided among my children that may be alive at the time" (of wife's death). The party plaintiff is bound by the decision of this Court in *Nicholson* v. *Drennan*, 35 S. C., 333, to uphold the conclusion that Elihu Lynn's widow took a life estate in the said lands. While in the *last instance* the testator certainly made an entirely distinct arrangement of his property, for he provided that if they could not all live upon this plantation, then his motherless sons should have homes with Henry Drennan and Nancy Millen, who were appointed their guardians, and empowered to receive their respective estates as coming to them "out of my estate." These guardians could not receive out of testator's estate what testator did not provide for them in his will. Of necessity the testator must be considered as providing by his will that an equal share of his estate must be received by each one of his children. The law will assume that the testator meant, by such provisions in his will as we have been discussing, to create an estate requisite to the carrying out of such views. It is apparent from the whole will that the testator had no other beneficiaries in his view than his

wife and his children.  If these views should not prevail,
then there is another ground whereby the conclusion of the
Circuit Judge may be established.  If the testator by the
second scheme of his will did not vest a fee simple in the
lands in his children, certainly he did not in the first scheme.
At death of testator the fee must vest somewhere.  It is sheer
nonsense in these practical days to speak of a title to lands—
and by these terms we mean the fee—not vesting, on the
death of a man, in some person then living.  By the first
scheme of the will the title did not vest in the wife, nor
children, nor executor.  Then where was this fee?  If a man
by his will does not provide for the vesting of the fee, the
law intervenes and vests it for him; it vests it in the heirs
subject to the provision of his will.  Then, if by the death
of three of the children, unmarried and childless, the fee to
the land became vested in the said Maria Lynn, now Millen,
and Robert Lynn, and they were also respectively life tenant
and sole contingent remaindermen, why will not the deed
in fee simple of each one of them to Sarah G. Nicholson
vest in her the absolute fee simple estate in these lands?
To us this seems clear.  Hence we can see no error in the
judgment of the Circuit Court.

It is the judgment of this Court, that the judgment of
the Circuit Court be affirmed.

MR. CHIEF JUSTICE McIVER concurs in the result, for
the reasons stated by the Circuit Judge in his decree.

MESSRS. JUSTICES GARY and JONES concur in the result.